IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jane Doe-2,<br><br>     Plaintiff,<br><br>  vs.<br><br>Sheriff of Richland County in his official capacity d/b/a Richland County Sheriff's Department, Sheriff Leon Lott, and Captain John E. Ewing,[1]<br><br>     Defendants. | Civil Action No. 3:20-cv-2274-CMC<br><br><br>**Order Granting Motion for Summary Judgment of Sheriff of Richland County in his Official Capacity d/b/a Richland County Sheriff's Department, Sheriff Leon Lott, and Captain John E. Ewing (ECF No. 35)** |

Through this action, Jane Doe-2 seeks recovery from Sheriff of Richland County in his official capacity d/b/a Richland County Sheriff's Department[2], and Sheriff Leon Lott ("Lott"), and Captain John E. Ewing ("Ewing") in their individual capacities (collectively "Defendants") for alleged sexual assaults by Deputy Jamel Bradley, a School Resource Officer at Spring Valley High School ("SVHS"), while she was a student. The matter is before the court on Defendants' motion for summary judgment based on statutes of limitations. ECF No. 35. For reasons set forth below, the motion is granted.

**STANDARD**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that

---

[1] Former Defendants Richland County School District 2 and Jeff Temoney were previously dismissed from the case. ECF No. 57.

[2] For ease of reference, this Defendant is referred to as "the Sheriff's Department."

there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007); *Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 568 (4th Cir. 2015). While all justifiable inferences must be drawn in favor of the non-movant, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986), a non-moving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. *Sandlands C&D LLC v. County of Horry*, 737 F.3d 45, 54 (4th Cir. 2013). "To survive summary judgment, there must be evidence on which the jury could reasonably find for the nonmovant." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); see also *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) ("The question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find.").

Rule 56(c)(1) provides as follows:

(1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

(b)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

2

Fed. R. Civ. P. 56(c)(1).

## BACKGROUND[3]

Jane Doe-2 alleges Jamel Bradley, a Richland County Sheriff's Deputy serving as a School Resource Officer, engaged in sexual activity with her while she was a 17-year-old student at SVHS in 2015–2016. At issue in this motion are state claims against the Sheriff's Department, as Bradley's employer, for negligence and gross negligence (First Cause of Action); negligent hiring, supervision, and retention (Fifth Cause of Action); and federal claims against Lott and Ewing[4] for supervisory liability under 42 U.S.C. § 1983 (Second Cause of Action).

### I.    *Factual Allegations*

Jamel Bradley was employed as a Deputy Sheriff with the Richland County Sheriff's Department and assigned to SVHS as a school resource officer ("SRO"). He was an SRO at SVHS during Jane Doe-2's high school tenure from 2012-2016. During the 2015-2016 school year, Bradley had sexual relations with Jane Doe-2, a minor then 17 years old.

### a.    Deputy Bradley's Conduct with Jane Doe-2

The sexual relations included intercourse "on numerous occasions both in Bradley's office at SVHS as well as at his residence." ECF No. 35-1 at 1 (citing Pl. dep.). It continued throughout

---

[3] The facts are presented in the light most favorable to Jane Doe-2. *See* Standard, *supra*.

[4] Defendant Ewing is a Captain with the Sheriff's Department and was Deputy Bradley's supervisor from 2014 until Bradley's termination in 2019.

her senior year and ceased when Jane Doe-2 ended the sexual activity in April or May 2016, before her graduation. During this time period, Jane Doe-2 did not inform her parents or school officials of the sexual activity, nor did she report it to anyone at the Sheriff's Department. As explained below, when questioned by Captain Ewing in December 2015, Jane Doe-2 denied any sexual activity with Bradley.

**December 2015 Target Incident.** In December 2015, Bradley was observed by Sheriff's Department narcotics officers meeting a female Spring Valley student behind a Target store at approximately 10:30 pm. ECF No. 50 at 6. The student was identified by these officers as Jane Doe-2. Bradley's supervisor, Captain Ewing, was advised, and he "skipped the chain of command" and reported the incident directly to Sheriff Lott "based on the sensitivity of the issue and the fact very little people need to know about this (because it could hurt the investigation)." ECF No. 50-6. Captain Ewing performed a "supervisory inquiry," but did not report the incident to Internal Affairs and did not conduct an "investigation." ECF No. 50-5 at 3 (Ewing dep. at 45) ("I agreed that I looked into it. And you keep using the word 'investigation,' and I just looked into it. Okay?").

Captain Ewing and Assistant Spring Valley Principal April Shell met with Jane Doe-2, who acknowledged meeting with Bradley but said it was to seek dating advice regarding an interracial relationship.[5] She denied Deputy Bradley ever made her feel uncomfortable or initiated

---

[5] An unsuccessful attempt was made by Shell to contact the parents of Jane Doe-2 prior to the meeting. Jane Doe-2's parents were not advised of the Target incident following her meeting with Ewing and Shell.

4

a "sexual type of conversation." ECF Nos. 50-6, 50-10. She made clear she "did not want to get Dep. Bradley in any trouble." ECF No. 50-10. Captain Ewing also interviewed Deputy Bradley, who said the purpose of the meeting was to talk about one of the student's friends with whom she was having a disagreement. *Id.*

Despite the conflicting statements, Captain Ewing determined both Jane Doe-2 and Bradley had consistent explanations for the meeting and expressly denied any sexual or inappropriate activities. He issued a verbal reprimand to Bradley. ECF No. 50-4 at 6. The reprimand noted it was inappropriate to meet with students after school hours, not to do it again unless it was an emergency, and Deputy Bradley was to be accompanied by another deputy if he needed to meet with a female student after school hours. *Id.* No examination of Deputy Bradley's School District email account or his Sheriff's Department issued cell phone was made. Such an examination would have revealed numerous contacts between Bradley and Jane Doe-2, including requests to meet before school and on weekends, attempts to avoid detection by the School District, and a photo of himself sent by Deputy Bradley to Jane Doe-2.

**May 2016 Concerned Parent Report.** Another report was received in May 2016, when a parent ("Concerned Parent") reported to school officials an alleged sexual relationship occurring between Bradley and an unidentified student. ECF No. 50-18 at 4. The Concerned Parent reported her daughter was a friend of the student, and had photos and a recorded conversation between her daughter and the student discussing her relationship with Deputy Bradley. *Id.* The Concerned Parent met with SVHS Principal Temoney and Assistant School Superintendent Baron Davis, and indicated she was aware of similar reports regarding Deputy Bradley that had been "covered up"

5

and "brushed aside." *Id.* at 18.  The Concerned Parent report was conveyed by school officials to Captain Ewing and to Internal Affairs, and an investigation began.  Deputy Bradley denied the accusations in full, and the Concerned Parent failed to respond to attempts by the Sheriff's Department to contact her.    Based on the Concerned Parent's failure to respond, the investigation was closed as "non-sustained."  *Id.* at 2.[6]

b.  Prior Reports of Inappropriate Conduct by Bradley

**2011 Cheerleader Incident.**  A report of a potentially inappropriate relationship between Deputy Bradley and a female student was received by the Sheriff's Department in 2011.  A cheerleading coach at Richland Northeast High School observed Deputy Bradley "flirting" with one of her students on the cheerleading team, and was uncomfortable with the interactions.  ECF No. 50-2 at 4.  The student and Deputy Bradley appeared to be on their cellphones communicating with one another.  *Id.* When the coach confronted the student, the student said: "No offense Coach, but he is married to a white woman and no white woman can satisfy a black man the way a black woman can."  *Id.*  The student admitted contact with Deputy Bradley "over Facebook," that they talk about how "it won't be long before she is eighteen," and that "the other officers know that he is mine."  *Id.*

The student was interviewed by Internal Affairs at the Richland County Sheriff's Department and denied a sexual relationship between herself and Deputy Bradley but admitted she

---

[6] Later discovered information would show this Concerned Parent report was correct – she was the mother of one of Jane Doe-2's friends, and the sexual relationship she reported was the one between Jane Doe-2 and Deputy Bradley.

and Bradley communicated on Facebook. She said her statements to her Coach were a "joke." *Id.* at 7. Deputy Bradley was also interviewed and described a "generic, simple SRO-student relationship." *Id.* at 9. He denied they communicated on Facebook, but acknowledged he did accept her "friend request." *Id.* Despite the inconsistent statements, no further investigation was undertaken, and the Internal Affairs investigation was closed as unfounded. Cpt. Pellicci[7] issued a Training Initiative on Deputy Bradley "for actions that may be misinterpreted by students and adults as something more than professional." *Id.* at 3.[8]

This investigation and Training Initiative also revealed two prior incidents of improper contact with female students. The year before the cheerleader incident, Deputy Bradley had been verbally counseled for giving female students rides home in his patrol vehicle. *Id.* In addition, he was reminded to leave dress code violations to school administrators after he told a student her dress was not too "short" or "sheer" when the student was confronted by an administrator about her clothing. *Id.* at 5. A parent complained about Bradley's involvement in this interaction. *Id.*

c.  Jane Doe-1

Earlier litigation against Deputy Bradley and the current Defendants arose out of a sexual assault reported by Jane Doe-1[9] that took place in Deputy Bradley's office at SVHS in March

---

[7] Captain Pellicci was Deputy Bradley's supervisor at the time, prior to Captain Ewing.

[8] The Training Initiative form ordered Bradley to refrain from engaging with students on social media and from engaging in "extracurricular conversations or activities with female students." *Id.*

[9] Jane Doe-1 is so designated in this Order to differentiate her from Jane Doe-2, Plaintiff in the instant litigation. Jane Doe-1 was identified simply as "Jane Doe" in her lawsuit. Although Jane

2018, almost two years after Jane Doe-2's graduation. See Civil Action No. 3:18-cv-02731. Jane Doe-1 was a 15-year-old sophomore who first reported and then denied a rumor that she was pregnant by Deputy Bradley to Assistant Principal Stacey Baker. She then admitted there had been some sexual activity between her and Bradley. A few days later, Jane Doe-1 informed Ms. Baker of a hypothetical situation with specific details of a girl named "Ashley" being sexually assaulted by Deputy Bradley. These reports were conveyed to Capitan Ewing, who characterized them as "rumor" and a "hypothetical story," and determined no further action was warranted. ECF No. 50-21 at 3.

A subsequent report to the Sheriff's Department by Jane Doe-1's mental health provider in April 2018 was referred to Internal Affairs and the Criminal Investigation Division for investigation. Bradley was polygraphed. Although the investigator believed Jane Doe-1 was truthful and Deputy Bradley was untruthful, it was ultimately determined there was a lack of probable cause for arrest. A recommendation was made that Bradley be removed from the SRO program; however, this recommendation was not followed, and Deputy Bradley returned to SVHS until he was reassigned to a different school the following fall.

d.  Discovery in Jane Doe-1 Case

In depositions in the Jane Doe-1 case, Sheriff Lott and Captain Ewing defended Deputy Bradley. Sheriff Lott testified on July 31, 2019 that Bradley was a "good school resource officer"

---

Doe-1's contact with Deputy Bradley was after Jane Doe-2's, Jane Doe-1 filed her lawsuit before Jane Doe-2.

8

and answered affirmatively when asked if he believed Bradley "exercises the appropriate judgment to safely interact with teenage girls." ECF No. 50-7 at 9. Sheriff Lott further agreed he was "comfortable testifying that [Jane Doe-1] simply made up these allegations against Deputy Bradley," believed the allegations by Jane Doe-1 to be untrue, and stood behind Deputy Bradley. *Id*. at 11, 52. [10]

During the Jane Doe-1 lawsuit, Jane Doe-2 was contacted about her relationship with Bradley. Initially she was approached by Bradley himself in August 2019, who "warned" her she was going to be questioned about allegations brought by another girl, and asked Jane Doe-2 to "cover for him." Jane Doe-2 asked if he had sex with this other girl, and he said no. ECF No. 50-9 at ¶12. The Sheriff's Department attempted to contact Jane Doe-2 at her work and at the home where she grew up. In October 2019, Joanna McDuffie, in-house counsel for the Sheriff's Department, arrived at Jane Doe-2's apartment and asked to discuss her relationship with Deputy Bradley. Jane Doe-2 contacted her former attorney, Mr. Taylor Bell, who spoke to Ms. McDuffie on a cell phone while she was at Jane Doe-2's apartment. Jane Doe-2 averred she believed "he told her I was not comfortable speaking to her about this situation and she should contact him with any questions." *Id.* at ¶ 15. In November, Jane Doe-2 was served with a subpoena to be deposed in the Jane-Doe-1 case, met with Attorney Bell about it, and learned of Jane Doe-1's accusations against the Sheriff's Department and School District. Jane Doe-2 sat for a deposition where she

---

[10] It was only after a third victim came forward during the Jane Doe-1 litigation that Deputy Bradley was terminated and arrested.

testified under oath and revealed the extent of her sexual activities with Deputy Bradley for the first time. In her affidavit opposing summary judgment in this case, she states she now understands the "relationship was wrong, it was illegal, that I was taken advantage of, and I can no longer ignore it." *Id.* at ¶ 19. She avers it was at her deposition she learned the "knowledge of Deputy Bradley's inappropriate behavior with female students was widespread . . . I now know that the Sheriff's Department and School District had opportunities to stop it but refused to do so." *Id.* at ¶ 20.

**ARGUMENTS**

**Defendants' Motion.** Defendants contend they are entitled to summary judgment because the statutes of limitations for filing these claims expired prior to the filing of this lawsuit on June 16, 2020. ECF No. 35. Defendants argue the applicable statute of limitations for state law claims brought pursuant to the South Carolina Tort Claims Act ("SCTCA") is two years under S.C. Code Ann. § 15-78-110. They concede it is tolled for a minor until she reaches the age of majority. Thus, Defendants contend the statute of limitations applicable to the First and Fifth Causes of Action expired in 2018, two years after Jane Doe-2's eighteenth birthday in 2016.

Defendants assert the statute of limitations for sexual abuse claims, found in S.C. Code Ann. § 15-3-555, does not apply to claims brought under the SCTCA.[11] They further contend this

---

[11] The statute reads:

> An action to recover damages for injury to a person arising out of an act of sexual abuse or incest must be commenced within six years after the person becomes twenty-one years of age or within three years from the time of discovery by the

10

statute does not apply to claims against third parties, but only claims against a perpetrator of the abuse. Therefore, they assert, the SCTCA claims brought by Jane Doe-2 do not receive the benefit of this longer statute of limitations.

Defendants Lott and Ewing argue the three-year statute of limitations codified in S.C. Code Ann. § 15-3-530 (5) and § 15-3-535 applies to the § 1983 claims.[12] They submit that statute of limitations period expired in 2019, approximately 11 months prior to Jane Doe-2's initiation of this lawsuit.

**Plaintiff's Opposition.** Jane Doe-2 argues Defendants are not entitled to summary judgment because there are questions of fact as to whether Defendants concealed their knowledge of the sexual abuse by Bradley. ECF No. 50. She contends Defendants were aware of Bradley's prior inappropriate relationships with female students, as detailed above, and should have further investigated reports of her own interactions with him. Because Defendants "deliberately concealed" their own knowledge of other incidents, including the reports in 2011 and the report of the sexual assault of Jane Doe-1 in 2018, Jane Doe-2 alleges she was not aware Defendants, particularly Captain Ewing, had knowledge of Bradley's "predatory behavior toward female high

---

person of the injury and the causal relationship between the injury and the sexual abuse or incest, whichever occurs later.
§ 15-3-555.

[12] They also argue the sexual abuse statute of limitations in § 15-3-555 is inapplicable to the § 1983 claims.

school students at Spring Valley High School" until November 2019, when she was deposed in the Jane Doe-1 case. ECF No. 50 at 16.

Jane Doe-2 also argues there is an issue of material fact precluding summary judgment as to the accrual of her § 1983 claims against Sheriff Lott and Captain Ewing pursuant to the discovery rule. She argues she "lacked knowledge of her constitutional injury" until after she was contacted by counsel for Defendants to provide a deposition in the Jane Doe-1 case.

Finally, Jane Doe-2 argues her § 1983 claim against Lott and Ewing would likely be subject to the South Carolina statute of limitations for claims "arising out of an act of sexual abuse," § 15-3-555, as the "most closely analogous" tolling statute. *Id*. at 31. She contends this claim is timely even in the absence of the questions of fact argued above, as she had not reached 27 years of age at the time she filed the instant action.

**Defendants' Reply.** In Reply, Defendants argue Jane Doe-2 did not specifically invoke the doctrine of fraudulent concealment equitable tolling, and even if she did, it is inapplicable because Jane Doe-2 cannot prove the three required elements: (1) the party pleading the statute fraudulently concealed facts which are the basis of a claim, (2) the plaintiff failed to discover those facts within the statutory period, and (3) the plaintiff exercised due diligence. ECF No. 56. They contend Jane Doe-2 cannot allege affirmative acts of concealment or misrepresentation, and that she did not act diligently to uncover the facts necessary to file her claims within the statutes of limitations. Defendants also argue Jane Doe-2 is not entitled to equitable estoppel because (1) she "had the means which with reasonable diligence she could acquire knowledge that there were

12

similar allegations by other females during the limitations period,", and (2) because she concealed the true nature of her relationship with Deputy Bradley. *Id.* at 19-21.

## DISCUSSION

    *1.   Applicable Statute of Limitations to State Law Claims*

        The court agrees the statute of limitations for sexual abuse claims in South Carolina Code § 15-3-555 does not apply to Jane Doe-2's claims against the Sheriff's Department for negligence and negligent supervision/retention (First and Fifth Causes of Action) brought pursuant to the SCTCA.[13]  *Doe v. City of Duncan*, 789 S.E.2d 602, 605-06 (S.C. Ct. App. 2016) (holding the SCTCA is the exclusive remedy for any tort committed by an employee of a governmental entity, thus the plaintiff's suit against the city for negligence by department officials was subject to the two year statute of limitations); *see also Doe v. Bishop of Charleston*, 754 S.E.2d 494 (S.C. 2014) (holding an employer has direct liability for an independent cause of action for negligent supervision of an employee, separate from the sexual abuse itself); *Doe v. Greenville Cty. Sch. Dist*, 651 S.E.2d 305, 309 (S.C. 2007) (noting a negligent supervision claim against the school district involving sexual abuse committed by a third party was brought pursuant to the SCTCA). Therefore, under South Carolina law, the statute of limitations in § 15-3-555, allowing a sexual abuse lawsuit to be commenced "within six years after the person becomes twenty-one years of age or within three years from the time of discovery by the person of the injury and the causal

---

[13] The court notes Plaintiff does not appear to dispute that the statute of limitations in § 15-3-555 does not apply to her SCTCA claims against the Sheriff's Department.

13

relationship between the injury and the sexual abuse or incest, whichever occurs later," does not apply.

The two-year SCTCA statute of limitations, S.C. Code § 15-78-110, applies to Jane Doe-2's claims for negligence and gross negligence, and negligent hiring, supervision, and training against the Sheriff's Department. § 15-78-110 ("Except as provided for in Section 15-3-40, any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered . . ."). This statute of limitations was tolled until Jane Doe-2 reached the age of majority in 2016. S.C. Code § 15-3-40 (tolling statute of limitations for causes of actions that accrue "within the age of eighteen years" and noting "the time of the disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended . . . in any case longer than one year after the disability ceases."). Jane Doe-2 filed the instant action on June 16, 2020, well over two years after reaching the age of majority.

### 2. *Applicable Statute of Limitations to Federal § 1983 Claims*

There is no federal statute of limitations for causes of action under 42 U.S.C. § 1983; therefore, the most analogous state statute of limitations applies. *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 483 (1980) ("Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983.") The Supreme Court has held because § 1983 claims "are best characterized as personal injury actions," a state's "general or residual" personal injury statute of limitations applies to those claims. *Owens v. Okure*, 488 U.S. 235, 240-41, 250 (1989). The Court has rejected a case-by-case approach for

14

the "most analogous" statute of limitations based on the type of § 1983 claim being litigated and instructed states to select "one most appropriate statute of limitations for all § 1983 claims." *Wilson v. Garcia*, 471 U.S. 261, 275 (1985). Because of the confusion that could result, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens*, 488 U.S. at 250.[14]

A court in this District has considered the question at issue in this case and held South Carolina's three-year statute of limitations applicable to general personal injury actions applies to a § 1983 claim of supervisory liability for sexual assault. *James Doe v. Arpaio*, No. 2:13-cv-3446, ECF No. 72. *Doe* analyzed and followed a Seventh Circuit case, *Woods v. Ill. Dept. of Children and Family Servs.*, 710 F.3d 762 (7th Cir. 2013), which cited *Owens* and *Wilson* in determining the proper statute of limitations was the state's general personal injury statute of limitations. *Arpaio* further analyzed the argument, also advanced by Jane Doe-2, that § 15-3-555 is not a true statute of limitations but a tolling provision. *Arpaio*, ECF No. 72 at 11. The court determined "relabeling" § 15-3-555 as a tolling provision would frustrate the intent of the Supreme Court in *Wilson* and *Owens* "to promote federal interests in uniformity, certainty, and the minimization of unnecessary litigation." *Owens*, 488 U.S. at 240. This court agrees, and finds the applicable statute

---

[14] The Court specifically referenced an example of a six-year statute of limitations based on a sexual act with a minor as one of many state statutes of limitations that *could* have applied if the general personal injury statute of limitations rule was not adopted. *Owens,* 488 U.S. at 244 n.8.

of limitations for Jane Doe-2's § 1983 claims against Defendants Lott and Ewing is South Carolina's three-year general personal injury statute of limitations.

The South Carolina general personal injury statute of limitations is codified at South Carolina Code § 15-3-530(5) and provides a three-year statute of limitations. This statute of limitations accrues when the person "knew or by the exercise of reasonable diligence should have known that he had a cause of action." S. C. Code § 15-3-535. Therefore, for Jane Doe-2's § 1983 claims, the statute of limitations is three years from when she knew or should have known of Lott and Ewing's actions that violated her rights under § 1983.

### 3.   *Accrual of the Statutes of Limitations*

If there is a genuine issue of material fact as to when a statute of limitations accrues, the issue is a question of fact for the jury. *Brown v. American Broadcasting Co., Inc.*, 704 F.2d 1296, 1304 (4th Cir. 1983) ("the issue of when plaintiff knew, or reasonably should have known of the existence of her cause of action, is a question to be resolved by a jury"); *see also Dean v. Ruscon Corp.*, 468 S.E.2d 645, 648 (1996) ("Here, however, there was no question of fact for the jury to decide because the only reasonable conclusion supported by the evidence is that Dean's lawsuit accrued in November 1984.").

In order to determine when the statutes of limitations accrued, it is necessary to examine the causes of action alleged. Jane Doe-2 alleges three existing claims against these Defendants: against the Sheriff's Department for negligence and gross negligence for myriad actions, including in the investigation of reports of inappropriate relationships (First Cause of Action); negligent

16

hiring/supervision/retention against the Sheriff's Department (Fifth Cause of Action); and a § 1983

supervisory liability claim against Sheriff Lott and Captain Ewing (Second Cause of Action).

    a.   <u>SCTCA Accrual (First and Fifth Causes of Action)</u>

In her First Cause of Action, Jane Doe-2 alleges negligence and gross negligence by the

Sheriff's Department:

> a. In failing to exercise reasonable or slight care to protect Plaintiff from harm at the hands of its personnel, agents, officers, and/or employees;
> b. In failing to exercise reasonable or slight care to properly train and/or supervise its personnel, agents, officers, and/or employees;
> c. In hiring Deputy Bradley and allowing him to interact with children after his preemployment polygraph indicated deceptive responses;
> d. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure with regard to the hiring and evaluation of its police officers;
> e. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure necessary to ensure that members of the public are safe and protected from physical abuse and threatening behavior;
> f. In failing to exercise reasonable or slight care to draft and/or institute proper policy and procedure that would lead to the discovery of inappropriate, threatening actions by its employees and prevent the same from occurring;
> g. In failing to exercise reasonable or slight care to make periodic and proper investigations and take remedial action as might be necessary to prevent inappropriate and/or threatening actions;
> h. In failing to exercise reasonable or slight care to take appropriate time to follow-up, review and/or check compliance with policy, state law and/or existing orders;
> i. In failing to exercise reasonable or slight care to take steps necessary to remove, fire and/or terminate Deputy Bradley, when they had actual and/or constructive notice of his propensities to harm minor female students, including the Plaintiff;
> j. In failing to exercise reasonable or slight care to properly supervise Deputy Bradley;
> k. In failing to properly investigate multiple reports of illegal and inappropriate sexualized conduct made against Deputy Bradley;
> l. In only conducting "in house" investigations into the multiple reports made against Deputy Bradley, instead of consulting with an independent agency or legal authority;
> m. In failing to protect the Plaintiff and other students from Deputy Bradley, when they knew or should have known of his propensities;

n. In failing to exercise reasonable or slight care to provide Plaintiff with proper protection from abuse (both physical and mental) at the hands of its school resource officer when it had notice of its officer's propensities towards inappropriate and/or abusive behavior;

o. In conducting itself in an egregious and arbitrary manner;

p. In threatening, physically assaulting and/or abusing Plaintiff;

q. In breaching its fiduciary duty of trust with regard to Plaintiff;

r. In failing to follow and adhere to the local state and national standards, policies and procedures including the policies and procedures of the Richland County Sheriff's Department;

s. In failing to follow and adhere to the policies and procedures of the Richland County Sheriff's Department regarding threatening behavior;

t. In engaging in a pattern and practice of allowing and/or condoning inappropriate conduct on behalf of the Richland County Sheriff's Department;

u. In failing to sufficiently monitor and supervise employees of the Richland County Sheriff's Department;

v. In failing to have the appropriate policies and procedures in place to provide adequate supervision;

w. In failing to remedy the improper conduct and actions of its employees, including Deputy Bradley; and

x. In failing to exercise even slight care to protect Plaintiff from harm.

ECF No. 1, Complaint, at ¶ 42.

Her Fifth Cause of Action alleges negligent hiring, supervision, and retention by the Sheriff's Department.   Specifically, Jane Doe-2 alleges the Sheriff's Department knew or should have known Deputy Bradley "was deceptive and untruthful during his pre-employment screening, disqualifying him to serve as a law enforcement officer," that Bradley was "sexually assaulting Plaintiff" and "was the subject of prior investigations regarding reports of illegal and inappropriate sexualized relationships with minor students, had prior disciplinary actions taken against him, and was not qualified to safely serve as a school resource officer, and/or interact with minor female students, including the Plaintiff." ECF No. 1, Complaint, at ¶¶ 68, 70.  Despite this knowledge, Plaintiff alleges, the Sheriff's Department failed to remove Bradley from the school and terminate

18

him, thus failing to provide Plaintiff with proper protection from abuse at the hands of its employee. *Id.* at ¶¶ 71- 72.

> Under South Carolina law,
>
> [a]n employer may be liable for negligent supervision when (1) his employee intentionally harms another when he is on the employer's premises, is on premises he is privileged to enter only as employee, or is using the employer's chattel; (2) the employer knows or has reason to know he has the ability to control the employee; and (3) the employer knows or has reason to know of the necessity and opportunity to exercise such control.

*Doe v. Bishop of Charleston*, 754 S.E.2d 494, 500 (S.C. 2014) (*citing Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992)). South Carolina also recognizes the tort of negligent retention, and the cases "generally turn on two fundamental elements – knowledge of the employer and foreseeability of harm to third parties." *Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (S.C. Ct. App. 2005).

> The South Carolina Supreme Court has held that under the SCTCA (§ 15-78-110),
>
> [t]he statute of limitations begins to run when a cause of action reasonably ought to have been discovered. In determining whether the cause of action should have been discovered, it must be decided when the facts and circumstances of the injury would put a person of common knowledge on notice that some right has been invaded or the claim against another party exists.

*Benton v. Roger C. Peace Hosp.*, 443 S.E.2d 537, 539 (S.C. 1994).

Because Jane Doe-2's action is not one against Deputy Bradley for sexual assault, but against the Sheriff's Department for negligence, the question is when Jane Doe-2 knew or should have known of *the Sheriff's Department's* negligent actions – not Bradley's conduct. The court therefore must determine at what point Jane Doe-2 knew or should have known through the

19

exercise of reasonable diligence that the Sheriff's Department was negligently responding to reports of Deputy Bradley's conduct with minor female students.

Jane Doe-2 alleges the Sheriff's Department negligently hired and supervised Deputy Bradley, then negligently retained him as an SRO at SVHS despite knowledge of his propensity for inappropriate and sexual relationships with minor female students. At the time of the Target incident in December 2015 and the following few days, and again in spring of 2016 after the Concerned Parent report, Jane Doe-2 alleges the Sheriff's Department undertook a deficient investigation and failed to uncover available evidence that would have revealed sexual activity between her and Deputy Bradley.

Jane Doe-2 claims she first learned the Sheriff's Department had knowledge of Deputy Bradley's prior inappropriate and sexualized conduct with female students in November 2019 when she was deposed in the Jane Doe-1 case. She explains she did not know other officers witnessed the Target incident, and was not aware Deputy Bradley had been reported for inappropriate relationships with students in the past. ECF No. 50-9 at ¶ 6. She also notes she was not aware of the Concerned Parent report. *Id.* at ¶ 10. Jane Doe-2 contends the Sheriff's Department concealed knowledge of Bradley's inappropriate conduct and negligently failed to address it, such that she was not on notice her rights had been invaded and causes of action against the Sheriff's Department existed.

However, Jane Doe-2 was aware in December 2015 that the Sheriff's Department had been alerted to the Target incident, and knew or should have known that a proper and comprehensive investigation did not occur after she and Deputy Bradley were interviewed, as the sexual activity

20

with Deputy Bradley continued without interference.[15]  While she might not have had *actual* knowledge of the extent of the Sheriff's Department's knowledge about Deputy Bradley's prior conduct until November 2019, she was clearly on notice of their failure to properly respond to suspected improper conduct between Bradley and her.  Once Jane Doe-2 reached the age of majority in 2016, she had two years and more than sufficient information to discuss potential claims with an attorney and bring a timely lawsuit.  However, this lawsuit was not filed until June 16, 2020.

b.  <u>Section 1983 Accrual</u>

Jane Doe-2's Second Cause of Action is for violations of § 1983 by Sheriff Lott and Captain Ewing.  She alleges both Defendants were acting under color of state law and possessed actual or constructive knowledge Deputy Bradley had been investigated for inappropriate sexualized relationships with minor students, had prior disciplinary actions taken against him, and "was not qualified to safely serve as a school resource officer and/or interact with minor female students, including the Plaintiff."  ECF No. 1, Complaint, at ¶ 46.  She alleges Defendants Lott and Ewing had actual or constructive knowledge of Bradley's actions and communications with Plaintiff yet took no action to terminate him or to prevent continued interaction.  Defendants Lott and Ewing therefore violated Jane Doe-2's constitutional rights, she alleges, "including her right

---

[15] If Defendants had properly investigated, identified, and responded to the sexual activity occurring between Jane Doe-2 and Deputy Bradley, it is highly unlikely he would have remained an SRO at SVHS.

to due process, liberty interest, and right to be free of unjustified intrusions on personal security as protected by the Fourteenth Amendment." *Id.* at ¶ 48.

For supervisory liability to attach under § 1983, Jane Doe-2 must meet the test set forth in *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). *Stroud* requires (1) the supervisor have actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799 (internal citations omitted).

Accrual for § 1983 claims is a question of federal law, and the statute of limitations begins to run when the plaintiff has a "complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); see also *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (under federal law, a cause of action accrues when "the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."). "In order to determine when a claimant possessed sufficient facts to know or have reason to know of the alleged injury, we may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996).

Thus, the court must determine at what point Jane Doe-2 knew or should have known through the exercise of reasonable diligence that Sheriff Lott and Captain Ewing were violating

Jane Doe-2's right to bodily integrity by failing to properly supervise Deputy Bradley. Jane Doe-2 alleges Sheriff Lott and Captain Ewing were aware of prior investigations and reports of Deputy Bradley's sexual activity with minor students, including Jane Doe-2, yet failed to protect Jane Doe-2's constitutional rights.  These alleged failings by Ewing and Lott took place in the 2015-2016 school year.

Jane Doe-2 was aware in December 2015 that Captain Ewing had been notified of the Target incident, and she knew or should have known that a complete investigation did not occur after she and Deputy Bradley were interviewed.  While she might not have had actual knowledge that Captain Ewing notified Sheriff Lott of the incident, or of the extent of Captain Ewing and Sheriff Lott's knowledge about Deputy Bradley's prior conduct until November 2019, she "possessed sufficient facts" of a failure to conduct a further investigation when (1) email, text and phone records of communications between herself and Deputy Bradley were not examined, (2) no one notified her parents, (3) she was not questioned further, and (4) the sexual activity between herself and Deputy Bradley continued for months.  Again, once Jane Doe-2 reached the age of majority in 2016, she had three years and more than sufficient information to discuss potential claims with an attorney and bring a timely lawsuit.  However, this lawsuit was not filed until June 16, 2020.

4. _Tolling_

The parties agree Jane Doe-2 is entitled to statutory tolling until she reached the age of majority in 2016, pursuant to § 15-3-40.[16]  However, this does not save Jane Doe-2's claims. Therefore, it is necessary to determine whether equitable tolling applies.

In South Carolina, equitable tolling serves to suspend or extend a statute of limitations. _Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr._, 687 S.E.2d 29, 32 (S.C. 2009) ("Where a statute sets a limitation period for action, courts have invoked the equitable tolling doctrine to suspend or extend the statutory period 'to ensure fundamental practicality and fairness.'").  The party claiming the statute of limitations should be tolled has the burden of establishing facts sufficient to justify the tolling.  _Id._  For § 1983 actions, both the statute of limitations and the equitable tolling rules are "borrowed" from the state unless they are inconsistent with federal law. _Bd. of Regents of Univ. of State of N.Y. v. Tomanio_, 446 U.S. 478 (1980); _see also Heimeshoff v. Hartford Life & Acc. Ins. Co._, 571 U.S. 99, 116 (2013) ("We recognized that when a federal statute is deemed to borrow a State's limitations period, the State's tolling rules are ordinarily borrowed as well because '[i]n virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling.'").

---

[16] Defendants acknowledge the SCTCA statute of limitations would be tolled until a year after Jane Doe-2 reached the age of majority if she had filed a verified complaint under S.C. Code § 15-78-80; however, there is no evidence of a verified complaint here.  In addition, this extra year would not save the SCTCA claims, as the statute of limitations then would have expired in 2019.

Jane Doe-2 appears to rely on the equitable doctrine of fraudulent concealment to toll the statutes of limitations until November 2019, when she was deposed in the Jane Doe-1 case and allegedly learned Defendants had prior knowledge of Deputy Bradley's inappropriate activities with female students. Although Defendants argue on reply Jane Doe-2 "omit[ted] any specific reference to, or analysis of the legal doctrine of fraudulent concealment," Jane Doe-2 did discuss, albeit briefly, the law of deliberate concealment tolling statutes of limitations in her response in opposition to summary judgment. ECF No. 50 at 2.

As noted above, to make out a basis for equitable tolling based on fraudulent concealment, a claimant must establish the opposing party fraudulently concealed facts that are the basis of a claim and the claimant failed to discover those facts within the statutory period, despite the exercise of due diligence. Here, Jane Doe-2 would have to show Defendants fraudulently concealed facts that make up the basis of her negligence or § 1983 claims, and she exercised due diligence but did not discover those facts (essentially, Defendants' knowledge of Deputy Bradley's inappropriate activities with female students) in the statutory period. Defendants argue Jane Doe-2 cannot establish any of these elements.

Defendants argue their "investigations" into the 2015 and 2016 reports involving Jane Doe-2 (the Target incident and the Concerned Parent Report) were stymied by Jane Doe-2's false statements to Captain Ewing in his interview with her after the Target incident, and by the Concerned Parent who would not cooperate with the interview process. Jane Doe-2 is correct that additional investigatory steps, such as examining Deputy Bradley's Sheriff's Department-issued cell phone and his School District email account, would have revealed numerous communications

25

between Bradley and Jane Doe-2. Jane Doe-2 made several statements during the interview with Captain Ewing that should have triggered a more fulsome response, including that she and Bradley communicated by telephone, he apparently obtained her cell phone number and called her at least once, and that she "didn't want to get him in trouble." Such evidence, however, while perhaps indicative of negligence, fails to amount to a showing of fraudulent concealment. In addition, as noted by Defendants, Jane Doe-2 affirmatively denied any sort of sexual or inappropriate relationship with Deputy Bradley and admits in her affidavit her "primary concern was keeping the relationship a secret." ECF No. 50-9 at ¶ 19. Although she was a minor at the time, she did not come forward once she reached the age of majority to notify anyone of the inappropriate conduct of Deputy Bradley.

Accordingly, the court finds Jane Doe-2 is not entitled to equitable tolling under the doctrine of fraudulent concealment. Therefore, the statutes of limitations for all Causes of Action expired prior to the filing of this lawsuit. [17]

---

[17] The court notes it does not find Jane Doe-2's claims would fail on the merits, only that they were untimely filed.

26

## CONCLUSION

For the reasons above, the court concludes Jane Doe-2 filed her Complaint outside the applicable statutes of limitations for her claims against these Defendants. Defendants' Motion for Summary Judgment is granted in full, and the Causes of Action against the Sheriff's Department, Sheriff Lott, and Captain Ewing are dismissed with prejudice.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
June 22, 2021